589 So.2d 133 (1991)
Deborah Lanier CUNNINGHAM
v.
Douglas C. LANIER, Jr.
No. 90-CA-0726.
Supreme Court of Mississippi.
November 6, 1991.
*134 Richard W. Hamilton, Pascagoula, for appellant.
Ben F. Galloway, Owen Galloway & Clark, Gulfport, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Harrison County Chancery Court from a grant of summary judgment in favor of Douglas C. Lanier. Lanier sought discharge of his obligation to pay alimony to his ex-wife, Deborah Cunningham, who has remarried.
After a review of the record in this case, we find a dispute of a material fact concerning the intent of the parties in a property settlement agreement executed by them in 1985, to provide for either alimony in gross or periodic alimony. Consequently, we reverse and remand to the Harrison County Chancery Court for further proceedings.

FACTS
This is the second appeal of Cunningham v. Lanier before this Court. The first appeal is reported at Cunningham v. Lanier, 555 So.2d 685 (Miss. 1989) (Justice Prather for the Court). This case has a substantial procedural history which we outline below.
Mrs. Deborah Lanier and Dr. Douglas C. Lanier, Jr., a physician, were divorced on the grounds of irreconcilable differences by Judgment of the Harrison County Chancery Court on September 26, 1985. The divorce ended a ten-year marriage, and there were two children from the marriage. Kelly Lanier, a daughter, was eight years old at the time of divorce (now 14), and a second daughter, Blair, was four years old (now 10). The couple agreed that Douglas would have primary custody of both girls with liberal visitation for the mother, Deborah. The couple reached a "CHILD CUSTODY AND PROPERTY SETTLEMENT AGREEMENT" which was incorporated into the Judgment of Divorce.
In the first Cunningham case, Douglas Lanier filed an action on April 15, 1987, to suspend alimony payments on the belief that his ex-wife had remarried. Deborah responded by filing a counterclaim. Then, Lanier filed a motion on May 28, 1987, for judgment on the pleadings pursuant to Miss.R.Civ.P. 12(c). On July 2, 1987, the trial judge treated the Rule 12(c) motion as one for summary judgment and submitted two interrogatories to Deborah. Deborah responded to the court's interrogatories in a letter and acknowledged that she had remarried to Alan James Cunningham on March 6, 1987. In this letter to the trial judge Deborah [hereinafter Cunningham] requested that she be allowed an additional fourteen days to produce and file counter-affidavits since the court announced that it was considering summary judgment and no such affidavits or other proof supporting her defenses and counterclaim were on record. According to the record, Cunningham's request for a hearing on the summary judgment was ignored, and the court entered summary judgment against her on July 30, 1987.
The sole issue on appeal in the first case was whether or not the court erred in not allowing sufficient time for Cunningham to present affidavits and other evidence pertinent to the opposition of a Rule 56 motion. This Court held that the trial judge erred in failing to grant Cunningham a reasonable time in which to oppose the summary judgment and that Cunningham's counterclaim must be addressed by the trial judge. "Because it failed to grant Cunningham a reasonable *135 time to file opposing documents in the case sub judice, this Court is unable to conclude that the Chancery Court conducted a careful review of all pertinent evidence in a light most favorable to the nonmovant." Cunningham v. Lanier, 555 So.2d 685, 686 (Miss. 1989) (emphasis in original). Therefore, this case was reversed and remanded to the Harrison County Chancery Court for compliance with the Mississippi Rules of Civil Procedure and fundamental standards of a fair opportunity to be heard.
Upon remand of the case by this Court on December 13, 1989, Lanier filed for summary judgment on April 20, 1990. A hearing on Lanier's motion was noticed and held approximately six (6) weeks later on May 30, 1990. However, the court took no action at this time and decided to postpone the hearing for two weeks.
The second hearing was held two weeks later on June 14, 1990, as scheduled. Cunningham's counsel appeared with two affidavits from his client and a motion for continuance. One of Cunningham's affidavits was in support of her motion for continuance. In this affidavit, Cunningham described testimony that was expected of Mr. Albert Necaise since Cunningham was unable to procure Necaise's attendance at the June 14, 1990, hearing, even though Necaise had allegedly been subpoenaed. Mr. Necaise represented Cunningham in her divorce action in 1985. The affidavit stated that if Necaise were present and able to testify, he would testify that Cunningham sold her property rights to Lanier for three hundred thousand dollars ($300,000.00) at the rate of $2500.00 per month for ten (10) years.[1]
At the conclusion of the June 14th hearing, the court issued a bench ruling which granted Lanier's summary judgment. Without the consideration of any testimony, the court summarily concluded that the parties agreed in 1985 that Lanier was obligated to pay periodic alimony which terminates upon the marriage of the payee spouse.
Cunningham's counterclaim was also dismissed. "[T]he counterclaim should fall because of the failure to present defenses which the Court could consider." Since Cunningham's counsel did not file affidavits until the date of the hearing in violation of M.R.C.P. 56(c),[2] the trial judge refused to consider Cunningham's claim.
Aggrieved by the grant of summary judgment in Lanier's favor, Cunningham now appeals to this Court.

Standard of Review
We employ a de novo standard of review in reviewing a lower court's grant of a summary judgment motion. Short v. Columbus Rubber and Gasket Co., Inc., 535 So.2d 61, 63 (Miss. 1988). Thus, we use the same standard that was used in the trial court. 10 Wright, Miller & Kane, Federal Practice and Procedure § 2716 (1983 and Supp. 1988). We must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to Cunningham, the nonmoving party, and she is to be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). The burden of demonstrating that no genuine issue of fact exists is on Lanier. Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 63-64 (Miss. 1988). A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving *136 party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). The Court does not try issues on a Rule 56 motion; it only determines whether there are issues to be tried. In reaching this determination, the Court examines affidavits and other evidence to determine whether a triable issue exists, rather than with the purpose of resolving that issue. Comment, M.R.C.P. 56.

ANALYSIS
The property settlement which was incorporated into the Judgment of Divorce included the following provision on alimony:
ALIMONY
Douglas C. Lanier, Jr. agrees to pay Deborah Lanier periodic alimony in the sum of $2,500.00 per month for a period of ten (10) years beginning October 1, 1985. It is understood between the parties that said alimony payments for tax purposes shall be a deduction for Douglas C. Lanier, Jr., and income for Deborah Lanier.
Other key provisions in the property settlement included the following.
REAL PROPERTY SETTLEMENT: Deborah Lanier agreed to deed her interest in the homestead, relinquishing all claims in such homestead to Douglas Lanier.
PERSONAL PROPERTY: Deborah Lanier was allowed to withdraw any funds credited to her in the Douglas C. Lanier, Jr., M.D. Pension Plan. Deborah was also granted the dining room furniture, as well as some china and a silver service which had been gifts from her family.
BOAT: The parties agreed to sell the vessel, "The Rogue," and divide the remaining equity 50/50 after the mortgage on the vessel had been satisfied.
Further, Douglas agreed to loan Deborah $17,000.00 at five percent (5%) interest on the following terms:
LOAN
Douglas C. Lanier, Jr. agrees to make Deborah Lanier a loan as follows: $17,000.00 at five (5) percent payable for a period of ten years ($180.32 per month payback). Deborah Lanier agrees to execute a note payable to Douglas C. Lanier, Jr.
In the Judgment of Divorce, dated September 26, 1985, there was no general or specific reference to alimony. The court merely incorporated the property settlement agreement into the judgment as follows:
The Court finds that the parties have agreed to the disposition of their respective property rights. The agreement of the parties is set forth in the Child Custody and Property Settlement Agreement, attached hereto as Exhibit `A', and the Court approves the Child Custody and Property Settlement Agreement attached hereto as Exhibit `A' as if fully copied in words and figures herein.
Cunningham's defense is very simple. She alleges that she sold her interest in the residence, a large boat, various stocks, tax shelters, all household furnishings and furniture and all other assets acquired during her marriage to Lanier, for the sum of $300,000.00. According to Cunningham, she agreed to a payment schedule of $2500.00 per month for ten (10) years. [$2500.00 X 120 months (10 years) = $300,000.00]. Furthermore, she alleges that the $17,000.00 loan which Lanier made to her was to be used to purchase a replacement residence, and her repayment of this loan was to be over a corresponding period of ten (10) years. Specifically, Cunningham explains that her $180.32 monthly loan repayment was to be offset against Lanier's $2500.00 monthly alimony obligation. This would make Lanier's monthly obligation $2319.68 per month ($2500.00 - $180.32 = $2319.68).
If Cunningham's assertion that she sold her property interests to Lanier for $300,000.00 is true, then such claim would obviously contradict Lanier's claim that his obligation was for periodic alimony which terminates upon the remarriage of the payee spouse. It is fundamental that alimony which "substitutes" as a division of property is lump sum rather than periodic *137 alimony, which by contrast is associated with maintenance and support of the former spouse. Maxcy v. Estate of Maxcy, 485 So.2d 1077, 1078 (Miss. 1986); Wray v. Wray, 394 So.2d 1341, 1345 (Miss. 1981). Of course, periodic alimony terminates automatically upon the remarriage of the payee, whereas alimony in gross or lump sum is a final settlement between husband and wife, unaffected by the remarriage of the payee spouse. Bowe v. Bowe, 557 So.2d 793, 794 (Miss. 1990); Holleman v. Holleman, 527 So.2d 90, 92 (Miss. 1988); Skinner v. Skinner, 509 So.2d 867, 869 (Miss. 1987); Sharplin v. Sharplin, 465 So.2d 1072, 1073 (Miss. 1985).
In finding a good faith dispute of a material fact, we need look no further than the face of the pleadings wherein Cunningham alleges (1) that the alimony in the settlement agreement was mistakenly mislabeled "periodic alimony" and, (2) that Cunningham sold substantial property rights for $300,000.00.
The parties were and are mutually mistaken by labelling the alimony payments designated in Exhibit `A' as periodic when in fact it was the agreement and intent of the parties to create an entitlement in the DEFENDANT/CROSS-PLAINTIFF for lump sum alimony to be payed to her as settlement of the property interests of the DEFENDANT/CROSS-PLAINTIFF acquired during the marriage of the parties.
* * * * * *
The DEFENDANT/CROSS-PLAINTIFF would show that as an inducement to abandon and convey all of her real property rights in the homestead of the parties she was to receive payment for same over a ten year period payable in monthly payments... .
Answer/Counterclaim of Deborah Cunningham.
This Court has held that when the terms of alimony are ambiguous, we will interpret the provision as one for periodic alimony absent clear, unequivocal language to the contrary. Sharplin v. Sharplin, 465 So.2d 1072, 1073 (Miss. 1985) [citing Wray v. Wray, 394 So.2d 1341, 1345 (Miss. 1981)]. Nevertheless, this Court noted in a recent case that in determining whether an obligation is lump sum or periodic, we look to the substance of what has been provided and not the label. Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990). "No technical or magical form of words is required as long as reasonable clarity is achieved. Specifically, the failure to use the words `lump sum' is not fatal." Bowe, 557 So.2d at 795; Maxcy v. Estate of Maxcy, 485 So.2d 1077, 1078 (Miss. 1986).

CONCLUSION
For the reasons stated in this opinion, we find summary judgment inappropriate in this case due to a dispute of a material fact, i.e., whether or not the parties intended lump sum or periodic alimony. Accordingly, the judgment of the Harrison County Chancery Court is reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, BANKS and McRAE, JJ., concur.
HAWKINS, P.J., concurs, joined by DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
ROBERTSON, J., concurs, joined by PRATHER, PITTMAN and McRAE, JJ.
HAWKINS, Presiding Justice, concurring:
I concur with the majority opinion, and write because my views are considerably different from Justice Robertson's concurring opinion, in which he finds little, if any basis, to conclude this other than a fixed, unalterable obligation of Lanier.
The paragraph reads:
Douglas C. Lanier, Jr., agrees to pay Deborah Lanier periodic alimony in the sum of twenty-five hundred dollars per month a period of ten (10) years beginning October 1, 1985. It is understood between the parties that said alimony payments for tax purposes shall be a deduction for Douglas C. Lanier, Jr., and income for Deborah Lanier.
*138 We have asked attorneys to be careful in drafting alimony provisions in divorce decrees and settlements. Wray v. Wray, 394 So.2d 1341 (Miss. 1981). It appears, at least to me, that Lanier's attorney was careful. In the first place, he denominated it "periodic" alimony. Justice Robertson finds calling an obligation "periodic alimony" both unfortunate and confusing. Perhaps so. The fact remains that this Court has not been mistaken, confused, or equivocal in what we have thought was "periodic" alimony. By numerous cases we have defined "periodic" alimony as alimony which is terminable upon the remarriage of the wife or death of the husband, and is also subject to change, depending upon the conditions of the parties subsequent to the divorce. Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990); Brendel v. Brendel, 566 So.2d 1269, 1271 (Miss. 1990); East v. East, 493 So.2d 927 (Miss. 1986); Maxcy v. Estate of Maxcy, 485 So.2d 1077 (Miss. 1986); Bush v. Bush, 451 So.2d 779 (Miss. 1984); Wray v. Wray, 394 So.2d 1341 (Miss. 1982).
Therefore, when the attorneys drafting this agreement used the term "periodic alimony," they used a term familiar in meaning to lawyers from past decisions of this Court, as well as other jurisdictions. 27A C.J.S. Divorce, § 235. It was alimony that ceased when she remarried or he died, as well as being subject to change, and of course, could have worked to Lanier's disadvantage should circumstances subsequent to the divorce have mandated a need of Mrs. Lanier (Cunningham) for additional alimony. Taylor v. Taylor, 392 So.2d 1145 (Miss. 1981). In this case a subsequent event happened to work to Lanier's advantage.
There is another reason both attorneys in this case should have been aware that the alimony was "periodic" and subject to cessation or change: the provision that it was deductible on Lanier's tax return and income on Mrs. Lanier's. Lump sum alimony is never tax deductible to the husband or income to the wife. Ordinary, or "periodic" alimony is income to the wife, and tax deductible to the husband. This is elementary income tax law and every attorney who handles divorce cases knows it. Title 26, Section 71, U.S.Code.
The concurring opinion tells the chancellor he succumbed to the "tyranny of labels." So what? He should have. I cheerfully plead guilty, myself. I would respectfully respond to this charge that every word is a label, no more, no less. The label is to tell us what the product is, what is in the package. The label "periodic alimony" in this case consists of two words, one an adjective, the other a noun. "Periodic" tells us what kind of alimony it is by well-defined, settled definitions from this Court. It made it abundantly clear to both attorneys, if they had read our decisions, the nature of Lanier's obligation to his divorced wife. And, it was precisely to remove any doubt as to the nature of the alimony that these attorneys labeled it "periodic." The concurring opinion erases the label. Unfortunately, the concurring opinion cannot remove the need for words.
The concurring opinion tells us that without the use of the word "periodic" there could be no question but that this was a fixed, unalterable obligation; but again, and precisely in order to avoid such a conclusion, the drafters of the agreement used the word "periodic alimony."
In addition, and as a clincher to the drafters' intent in using the word "periodic" as to the alimony, they provided that the payments were to be income to the divorced wife, and tax deductible to the husband. If this were a fixed unalterable obligation, no tax court would allow the husband to deduct the payments to the wife. No knowledgeable attorney would draft something he knew could not pass inspection in a tax court.
I therefore come to the precisely opposite conclusion of Justice Robertson. In my view the words of this paragraph meant this as an obligation which terminated with her remarriage.
Also, the concurring opinion ignores the following holding from Wray v. Wray, 394 So.2d at 1345:
We also hold that because lump sum alimony, or alimony in gross, as a general rule is awarded in special situations *139 under the broad discretionary authority of the chancery court, a decree awarding alimony should be construed as providing for periodic alimony, subject to change or termination because of the future situation of the parties, unless the decree by clear and express language imports lump sum alimony, or alimony in gross.
In this case the drafters of the agreement by the use of the "label" "periodic" alimony, and in addition providing that the payments were tax deductible to Lanier and income to his divorced wife, a very important tax consequence, made it quite plain that they intended this to be alimony which would terminate should she remarry. If they had intended it otherwise, the agreement would not have stated it was "periodic" alimony, but rather an obligation to pay Mrs. Lanier $300,000, due and payable in monthly installments of $2,500 each, beginning October 1, 1985.
If in fact this was periodic alimony, then the concurring opinion does Lanier a double injustice, not only making him pay money he does not owe, but also disallowing what would otherwise be an annual $30,000 tax deduction.
I share with Justice Robertson the appreciation of the extreme difficulty in determining the line between "periodic alimony" and "lump sum" or "gross alimony." I also share with him the view that we should not altogether succumb to an unsupported label. On the other hand, I believe I have more respect for the labels attorneys use than does he. The difficulty in these cases is not simply one of labels, but rather that hindsight is better than foresight. An event happens subsequent to the divorce which makes one or the other of the divorced parties wish the alimony or property settlement provision had been worded differently than it was. Some stability, some certainty in the meaning of "labels," however, should be important. Otherwise, the "labels" used in the divorce decree are meaningless. This is by no means the first time this Court has struggled with whether post-divorce obligations are fixed, or alimony. East v. East, supra. It will not be the last.
When we propose a "solution" to a problem of this nature, it should not be a myth or a mirage. Nor does obfuscatory cant a solution make.
DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ., concur.
ROBERTSON, Justice, concurring:
The Chancery Court erred when it entered judgment summarily in favor of Douglas C. Lanier, but the reason this is so is that, as a matter of law, the September 26, 1986, court-approved property settlement ("the divorce decree") vested in Deborah Lanier the right to monthly payments which did not terminate upon her remarriage.
Much ink has been spilled over the distinction between so-called permanent alimony, sometimes (unfortunately and confusingly) called periodic or continuing alimony, and lump-sum alimony or alimony in gross. We let the tail wag the dog when we start with the labels, not the underlying concepts nor the language being labeled. If we have settled anything in this area, it is that, "We look to the substance of what has been provided, and not the label" and that "No technical or magical form of words is required as long as reasonable clarity is achieved." Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990).
The language before us is:
Douglas C. Lanier, Jr. agrees to pay Deborah Lanier periodic alimony in the sum of twenty-five hundred dollars per month a period of ten (10) years beginning October 1, 1985.
What is clear to my mind is that, once this language was approved by the court and incorporated into the divorce decree, Douglas became obligated to pay Deborah $300,000.00 at the rate of $2,500.00 per month beginning October 1, 1985, and ending September 1, 1995. The King's English, coupled with simple arithmetic, strongly suggest this reading. It matters not that the legal mind may find a second possible reading. That may always be done, if counsel be competent. In cases like this we ask whether there is a textual rendering sufficiently *140 superior that it crosses the finish line ahead of the others, not whether there are others in the race. When we do this with this text, we find what we call lump sum alimony. Thus we may say today's text provides a right vested in Deborah when the divorce decree became final, so that it became an obligation of Douglas' not subject to change or modification, absent fraud, and certainly not subject to premature termination in the event of remarriage. It became an obligation of Douglas' estate should he die before payment. See, e.g., Bowe v. Bowe, 557 So.2d at 795; Holleman v. Holleman, 527 So.2d 90, 92 (Miss. 1988); East v. East, 493 So.2d 927, 931 (Miss. 1986); Maxcy v. Estate of Maxcy, 485 So.2d 1077, 1078 (Miss. 1986); Wray v. Wray, 394 So.2d 1341, 1344 (Miss. 1981). When we find this in the legal language, there are no further facts to be tried.
The court below succumbed to the tyranny of labels,[1] that most seductive of legal sirens, and the majority's resistance is less than complete. It is true Douglas and Deborah used the phrase "periodic alimony" in describing these payments, but to give this phrase controlling effect is the converse of the sin we condemned in Bowe when we said, "The failure to use the word `lumpsum' is not fatal." Bowe v. Bowe, 557 So.2d at 795, citing Maxcy v. Estate of Maxcy, 485 So.2d 1077, 1078 (Miss. 1986). The Chancery Court allowed a less than precise modifier, "periodic," to control the legal effect of a clause, the mathematics and linguistics of which were otherwise without doubt. Had the word "periodic" not appeared, no one would seriously suggest the clause failed to confer vested, unmodifiable alimony on grounds it did not say "lump-sum alimony of $300,000.00, payable in installments of $2,500.00 per month ..."
To be sure, the presence of the word "periodic" gives pause.[2] If it means the kind of alimony modifiable on change of circumstances and terminable on death or remarriage, it conflicts with "for a period of ten (10) years beginning October 1, 1985." To give "periodic" that meaning, we must read into the text terms that are simply not there. On the other hand, if we accept that "periodic" is ambiguous and may have a less legally laden meaning, so that it means only "occurring at regular intervals," Webster's Third New International Dictionary 1680 (1971), the sentence is easily harmonized. A text is not legally ambiguous, that we must read it four times to find its meaning. See Leach v. Tingle, 586 So.2d 799, 801-802 (Miss. 1991); Webster v. Webster, 566 So.2d 214, 216-17 (Miss. 1990).
As the language of the court-approved property settlement is legally adequate that it may be interpreted and enforced without more, the question whether there exists on this record a good faith dispute of material fact is pretermitted. I regret I did not see this when the case was first before us. Cunningham v. Lanier, 555 So.2d 685 (Miss. 1989).
PRATHER, PITTMAN and McRAE, JJ., concur.
NOTES
[1] Cunningham's affidavit which was styled in opposition to the motion for summary judgment contained the same information as her affidavit in support of the motion for continuance. That is, Cunningham sold to Lanier her one-half interest in the homestead for $2500.00 per month for ten years. "I conveyed all of my interest in the homestead property, a large boat, various stocks, various tax shelters, all household furnishings and furniture, and all other assets acquired during the marriage to Douglas C. Lanier, Jr., for the sum of $300,000.00. The $300,000.00 was to be paid to me over a ten (10) year period at the rate of $2,500.00 per month."
[2] "The adverse party prior to the day of the hearing may serve opposing affidavits." M.R.C.P. 56(c). (emphasis added). Cunningham's counsel did not file affidavits until the day of the hearing, June 14, 1990.
[1] Thornhill v. System Fuels, Inc., 523 So.2d 983, 1003 (Miss. 1988) (Robertson, J., concurring); J.L. Teel Co., Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857 (Miss. 1986).
[2] "Permanent alimony" is the preferred legal label for that kind of alimony modifiable upon change in circumstances and terminable upon death of the obligor or remarriage of the obligee. See, e.g., Hand, Mississippi Divorce, Alimony and Child Custody §§ 11-1, et seq. (1981); Bunkley & Morse, Amis on Divorce and Separation in Mississippi §§ 6.00, et seq. (1957). Had the text read "permanent" instead of "periodic," we would have a legal ambiguity resolvable only by resort to parol or extrinsic evidence.