Pat M. BARRETT, Jr. and Joyce Barrett, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3:94–CV–36(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 18, 1995.

---

James T. Knight, C. Ted Sanderson, Copeland, Cook, Taylor & Bush, Jackson, MS, for plaintiffs.

William D.M. Holmes, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the cross-motions of plaintiffs Pat M. Barrett, Jr. and his current wife, Joyce Barrett and defendant United States for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court has considered the parties' memoranda of authorities and concludes that the plaintiffs' motion should be denied and the government's motion granted.

The issue presented for resolution by the parties' motions is whether two payments by Pat Barrett of $50,000 and $54,000 to his former spouse, Helen Barrett, made in the years 1989 and 1990, respectively, are deductible as alimony under sections 71 and 215(a) of the Internal Revenue Code of 1986. There is no dispute between the parties as to the facts underlying this controversy, which are as follows: Pat Barrett and Helen Barrett were divorced on November 8, 1984. Under the terms of their divorce decree, Pat Barrett was ordered to make monthly alimony payments to Helen Barrett in the sum of $1900 "until her death or remarriage." The

amount of Mr. Barrett's monthly alimony obligation was subsequently reduced to $1400 by order of the Holmes County Chancery Court upon a finding of a material change in circumstances regarding Helen Barrett's earnings and earning capacity. In accordance with the terms of the modified decree, which was entered October 7, 1985, Mr. Barrett made the required alimony payments to his former wife through February 1988, at which time he petitioned the chancery court to terminate his alimony obligation and ceased making alimony payments. Helen Barrett responded in opposition to her ex-husband's motion and filed a motion to hold him in contempt for his failure to pay her alimony in accordance with the court's decree.

In September 1989, by which time Pat Barrett was in arrears for alimony in the sum of $25,200, the parties commenced settlement negotiations which culminated in the chancery court's entry on September 8, 1989 of a Consent Order of Modification. That order, so far as is pertinent here, provided as follows:

THIS DAY THIS CAUSE came on to be heard on the motion of the plaintiff, Pat M. Barrett, Jr., to terminate the alimony awarded to defendant, Helen P. Barrett based on a material change in circumstances of the parties, and alternatively, on a motion to reduce the alimony being paid by plaintiff on the grounds of a material adverse change in the financial circumstances of plaintiff and on the motion of defendant to hold plaintiff in contempt of court and the court having considered the matter, and having conferred with counsel and being advised of an agreement between the parties to settle all matters in dispute between them is of the opinion that a modification should be granted as follows:

1.

That all obligations of plaintiff, Pat M. Barrett, Jr., to pay any past or future alimony or other obligations to Helen P. Barrett pursuant to paragraph 8 of the original decree entered herein dated November 8, 1984, and as modified by that certain order dated October 7, 1985, paragraph 6 thereof, and all further known and unknown claims for support of defendant, Helen P. Barrett against the plaintiff, Pat M. Barrett, Jr. be and [are] hereby terminated. That this termination of alimony shall not be subject to further revision, reinstatement or change in any manner.

2.

That plaintiff Pat M. Barrett, Jr., as additional property settlement, shall pay unto the defendant, Helen P. Barrett the sum of $50,000 on September 8, 1989; and the sum of $50,000 on or before September 8, 1990, said second payment to carry interest at the rate of 8% per annum.

Consistent with the terms of the order, Pat Barrett paid to Helen Barrett $50,000 on September 8, 1989 and $54,000 on September 8, 1990, the additional $4000 on the latter payment representing the interest required by the order.

Initially, the plaintiffs' income tax return for tax year 1989 did not claim a deduction for the $50,000 payment.[1] Subsequently, however, they filed an amended return claiming that this payment was deductible as alimony. Similarly, the plaintiffs' original tax return for 1990 claimed no deduction for the $50,000 payment to Helen Barrett, though they reported a deduction of $400, representing ten percent of the $4000 in interest on the $50,000 which Pat Barrett paid to his former wife in September 1990.[2] Thereafter, the plaintiffs filed an amended 1990 return by which they reversed the $400 personal interest deduction and included the entire $54,000 as a deduction for alimony. These amended returns for the years 1989 and 1990 claimed refunds of $16,585 and $17,688, respectively, for a total of $34,273. The claims were disallowed.

---

1. Joyce Barrett, Pat Barrett's current wife, is a plaintiff in this tax action because she and Pat Barrett filed joint tax returns for the years at issue.

2. In accordance with Section 163(h) of the Internal Revenue Code of 1986, all but ten percent of personal interest paid by a taxpayer in 1990 was excluded as a deduction.

The plaintiffs filed this action against the government seeking the $34,273 refund reflected on their amended returns, together with statutory interest. The parties have stipulated that the resolution of this case turns on whether they are entitled to deduct the payments of $50,000 and $54,000 to Helen Barrett in the tax years 1989 and 1990. According to the plaintiffs, these sums constituted alimony, which is deductible under Sections 71 and 215(a) of the tax code. The government, on the other hand, maintains that the payments are not deductible as alimony because those payments, under the terms of the chancery court's consent judgment of September 8, 1989, do not qualify as alimony under the definition of alimony established by Section 71.[3]

■ Section 215(a) of the code provides a deduction for alimony as follows:

(a) GENERAL RULE. In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

Section 71, to which section 215(b) refers for the definition of alimony, states:

(b) ALIMONY OR SEPARATE MAINTENANCE PAYMENTS DEFINED—For purposes of this section—

(1) IN GENERAL—The term "alimony or separate maintenance payment" means any payment in cash if—

(A) such payment is received by (or on behalf of) a spouse under a divorce or separate instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includable as gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

The parties agree that Pat Barrett's payments satisfy subparts (A), (B) and (C) of this definition. It is as to subpart (D) that they disagree. The decisive issue in determining whether the payments at issue meet that subpart is whether, as the plaintiffs contend, the payments constituted periodic alimony which would have terminated upon the death (or remarriage) of the wife, *Wray v. Wray*, 394 So.2d 1341, 1344 (Miss.1981), or whether, as the government claims, the consent order provided for the payments as lump sum alimony or some other nondeductible property settlement, which obligation was fixed upon entry of the decree and not abatable upon the wife's death, *id.*[4] The court has considered the provisions of the September 8, 1989 consent order, as well as the authorities cited by the parties, and concludes that the payments were lump sum alimony which the taxpayer, Pat Barrett, is not entitled to deduct under the applicable tax code provisions.

As this court's review of a number of Mississippi cases reveals, it can often be difficult to distinguish between periodic alimony and lump sum alimony. On this point, the Mississippi Supreme Court observed in *Bowe v. Bowe*, 557 So.2d 793 (Miss.1990), as follows:

[W]e have encountered difficulties over the years in the occasional failure of chancery courts to make clear whether their judgments are providing for alimony which is modifiable or terminable upon certain conditions, on the one hand, or for alimony which is vested and final, on the other....

What is commonly referred to as periodic alimony terminates automatically upon

---

**3.** Plaintiffs also raised an issue in their complaint regarding whether $259 paid for the amount of life insurance payments on behalf of Helen Barrett was deductible. That issue has been settled by the parties and is no longer a matter for the court's consideration.

**4.** The determination of whether the obligation to make a cash payment incident to divorce terminates upon the death of the payee spouse is made by reference to state law. *Burnett v. Harmel,* 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932).

the death of the obligor or the remarriage of the obligee. ... Periodic alimony is also subject to modification (by increase or decrease) or even termination, in the event of a material change of circumstances subsequent to the decree awarding alimony, although self help is pretermitted; that is, a change or modification may be made only upon order of the chancery court. Periodic alimony becomes vested only on the date each periodic payment becomes due.

By way of contrast, what is commonly referred to as lump sum alimony is that ordered by a court in such form and manner that from the outset it becomes fixed and irrevocable. Lump sum alimony may be payable in a single lump sum or in fixed periodic installments. It may be payable in cash or in kind or in combination thereof. It is a final settlement between the husband and wife and may not be changed or modified by either party, absent fraud. Lump sum alimony is vested in the obligee when the judgment awarding it becomes final, retroactive to the date the judgment is entered. It becomes an obligation of the estate of the obligor if he or she dies before payment.

557 So.2d at 794–95 (citations omitted). The court has also distinguished these types of alimony thusly:

It is fundamental that alimony which "substitutes" as a division of property is lump sum rather than periodic alimony, which by contrast is associated with maintenance and support of the former spouse. Of course, periodic alimony terminates automatically upon the remarriage (or death) of the payee, whereas alimony in gross or lump sum alimony is a final settlement between husband and wife, unaffected by the remarriage (or death) of the payee spouse.

*Cunningham v. Lanier*, 589 So.2d 133, 136–37 (Miss.1991); *see also Hopkins v. Hopkins*, 379 So.2d 314, 315 (Miss.1980) ("[I]f lump sum permanent alimony is allowed, it is a

final settlement between the parties to the extent of the husband's duty to contribute to the wife's support, and cannot be changed or modified on the application of either party.").

Based on its acknowledgement of the differences between the two forms of alimony, the Mississippi Supreme Court has said that "when the wording of the judgment is such that we cannot tell which it is, we will consider that the award is for periodic alimony and not lump sum alimony." *Bowe*, 557 So.2d at 795 (citing *Wray v. Wray*, 394 So.2d 1341, 1344 (Miss.1981)). The court has cautioned, though, that

we look to the substance of what has been provided, and not the label. We inquire not what the court entering the prior judgment meant but what the judgment means, the language employed our primary and ultimate reference. No technical or magical form of words is required as long as reasonable clarity is achieved. Specifically, the failure to use the words "lump sum" is not fatal.

*Id.* (citing *Maxcy v. Estate of Maxcy*, 485 So.2d 1077, 1078 (Miss.1986)). With these basic principles in mind, the court thus considers the matters presented in the case at bar.

■ Unquestionably, the original and first modified decree entered in the Barretts' divorce action constituted periodic alimony. However, the September 8, 1989 order at the heart of this litigation irrevocably terminated Pat Barrett's obligation under those decrees "to pay any past or future alimony or other obligations to Helen P. Barrett," and terminated "all further known and unknown claims for support of defendant, Helen P. Barrett against" Pat Barrett. This "termination of alimony," the decree recited, was not "subject to further revision, reinstatement or change in any manner." Thus, the consent order operated to completely rescind any previous alimony obligations and further purported to terminate all future alimony and support obligations.[5] That having been done,

---

**5.** Plaintiffs submit that since the original decree provided that Pat Barrett's obligation to make the ordered alimony payments would terminate upon his former wife's death or remarriage, and since the September 8, 1989 consent decree really did nothing more than substitute a new alimony obligation for the original obligation, and further that since the consent order recited that all terms of the original decree, except as expressly modified, were to remain in full force and

Pat Barrett was ordered, in a separate paragraph, to make two separate payments of $50,000 to his ex-wife, on dates certain; those payments were not denominated as "alimony," whether periodic or lump sum, but rather were described by the order as constituting "additional property settlement."

In the court's opinion, the consent order provides for the payment of lump sum alimony with "reasonable clarity." *Bowe*, 557 So.2d at 795. It is true, as plaintiffs repeatedly point out, that the order does not make provision for one specific amount, i.e., $100,000, to be paid in two separate payments,[6] but rather provides for two payments of $50,000 each. However, that does not undermine the court's opinion that lump sum alimony is what was intended. The order not only specifically terminated Pat Barrett's obligation to pay alimony pursuant to the earlier decrees, but purports to terminate any and all *support* obligations, past or future, by Pat Barrett to his former wife. Significantly, the order also recites that the payments are "as additional property settlement." As this court has observed *supra*, "alimony which 'substitutes' as a division of property is lump sum rather than periodic alimony, which by contrast is associated with

maintenance and support of the former spouse." *Cunningham*, 589 So.2d at 136.[7] In short, because the court is convinced that the consent order, by its language and tenor, was obviously intended as a final settlement between the parties which was final and irrevocable, the court concludes that it constituted lump sum alimony for which Pat Barrett would have been liable even after the death of his former wife.[8]

██ Plaintiffs argue that even if Pat Barrett is not entitled to deduct the full $104,000 paid pursuant to the consent order, he is entitled to deduct $25,200 of the 1989 $50,000 payment since that is the amount by which he was in arrears on the originally ordered alimony. They point out that had Pat Barrett paid this amount in accordance with the terms of the original divorce decree, as modified, it clearly would have been deductible, and argue that since the consent order was obviously intended, in part, as a resolution of the arrearages, then he is at least entitled to a deduction in that amount. While this argument is appealing, the court concludes that it must be rejected. The consent order by which this court's decision must be guided provides no indication that any part of the monies ordered to be paid by Pat Barrett

effect, then the substitute alimony must be deemed deductible to the same extent as the originally ordered alimony. If the consent order had done nothing more than change the *amount* of Pat Barrett's periodic alimony payments, then of course, plaintiffs' argument would have merit. However, the consent order expressly terminated *"all obligations"* of Pat Barrett "to pay any past *or future* alimony" to Helen Barrett "pursuant to paragraph 8 of the original decree [of] November 8, 1984, and as modified by that certain order dated October 7, 1985, paragraph 6 thereof...." Thus, the consent order effectively rescinded all of that part of the 1984 original decree and 1985 modified decree relating to the payment of alimony, including, presumably, that part of paragraph 8 which required the payment of alimony until Helen Barrett's death or remarriage.

6. Citing a number of cases, the plaintiffs insist that this is an essential, identifying attribute of lump sum alimony. The court, however, having reviewed the cited authorities, concludes that this is more in the nature of a circumstance that is suggesting lump sum alimony, rather than a necessary characteristic of lump sum alimony.

7. Plaintiffs acknowledge that the lump sum type of cash payment generally serves as a substitute for a division of property between the spouses.

Nevertheless, plaintiffs contend that there were no property issues left unresolved between the parties following entry of the original divorce decree and that, in fact, the only issues on the table prior to entry of the consent order related to Pat Barrett's alimony obligation. They argue, then, that the use of the term "property settlement" was not accurate and has simply added to the confusion and ambiguity inherent in the order. They contend, therefore, that it cannot be said with "reasonable clarity" that lump sum alimony was intended. Plaintiffs' argument overlooks the Mississippi Supreme Court's admonition that the courts must "inquire not what the court entering the prior judgment meant but what the judgment means, the language employed [being the] primary and ultimate reference." *Bowe*, 557 So.2d at 795.

8. In its motion for summary judgment, the government contended that if the $4,000 interest payment in 1990 was not held deductible as alimony, plaintiffs still were not entitled to claim a deduction for personal interest based on the payment of that amount. Due to its resolution of the alimony issue, the court need not reach this question.

was in satisfaction of the amount by which he was in arrears rather than as "an additional property settlement," and expressly terminated all alimony obligations of Pat Barrett under the original divorce decree, as modified.

Based on the foregoing, it is ordered that the government's motion for summary judgment is granted. It is further ordered that the plaintiffs' motion for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.