**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-103

UNITED STATES TAX COURT

FRED D. MURRAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22807-12S.                    Filed December 12, 2013.

<u>Gwendolyn Baptist-Hewlett</u>, for petitioner.

<u>William B. McClendon</u>, for respondent.

SUMMARY OPINION

CHIECHI, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursu-

---

[1]Hereinafter, all section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

ant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $14,430 deficiency in, and a $2,886 accuracy-related penalty under section 6662(a) on, petitioner's Federal income tax (tax) for his taxable year 2009.

The issues for decision for petitioner's taxable year 2009 are:

(1) Do the two payments totaling $55,000 that petitioner made to his former spouse during 2009 constitute alimony deductible under section 215(a)? We hold that they do not.

(2) Is petitioner liable for the accuracy-related penalty under section 6662(a)? We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner resided in Mississippi at the time he filed the petition.

At a time not established by the record, petitioner and Lisa Lynn Murray (Ms. Murray) decided to end their marriage. On March 5, 2009, they signed a document titled "PROPERTY SETTLEMENT AGREEMENT" (settlement agreement), which they indicated therein "makes fair and equitable provisions for the distribution of the property of the parties [petitioner and Ms. Murray]".

The settlement agreement set forth the agreement of petitioner and Ms. Murray with respect to certain matters that were identified as follows in that agreement: "REAL PROPERTY", "MOTOR VEHICLES", "BANK ACCOUNTS AND PERSONAL PROPERTY", "RETIREMENT ACCOUNTS", and "ALIMONY".

The agreement of petitioner and Ms. Murray in the settlement agreement with respect to "ALIMONY" was as follows:

5. ALIMONY:

Both parties acknowledge that they are both in good health and have no mental or physical restriction that would prevent either from gainful employment. The parties freely, voluntarily, expressly, and mutually agree to release one another of any and all duty and obligation one may owe to the other for any alimony or related support whether lump sum, periodic, rehabilitative or of any nature, except as specifically set out herein. It is specifically agreed that the Husband shall pay unto the Wife the sum of $55,000.00 as lump sum alimony to be paid as follows: $25,000.00 by cashiers funds upon the execution of this [settlement] agreement and $30,000.00 by cashiers funds within 30 days from the date of the execution of this agreement. The funds shall be paid through the office of the Wife's attorney. All provisions contained hereinabove for the payment of debts or division of marital property is by way of support one to the other and shall not be dischargeable in bankruptcy.

The agreement of petitioner and Ms. Murray in the settlement agreement with respect to a "FINAL DECREE OF DIVORCE" was as follows:

In the event a Final Decree of Divorce is entered in any action or proceeding herein, this Agreement and in particular the provisions relating to the property rights and other matters set forth in the said Agreement, if the Court approves the same, shall be incorporated therein, merged with and become a part of such Final Decree of Divorce.

The agreement of petitioner and Ms. Murray in the settlement agreement with respect to "RELEASES AND OTHER OBLIGATIONS" was in pertinent part as follows:  "Both parties agree that this Agreement shall be binding upon the parties and their respective heirs, executors, administrators, and assigns."

The agreement of petitioner and Ms. Murray in the settlement agreement with respect to its "MODIFICATION" was in pertinent part as follows:  "A modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement, and approved by the [Chancery] Court [of DeSoto County, Mississippi]".

The agreement of petitioner and Ms. Murray in the settlement agreement with respect to "TAX ADVICE" was as follows:

Both parties further agree that no tax advice has been requested nor furnished by said attorneys in this divorce action regarding the tax consequences of this Property Settlement Agreement and shall hold the law firms and individual attorneys therein, of Myers Law Group, PLLC, and Debra P. Branan harmless and blameless for any tax consequences related to this Property Settlement Agreement.

Petitioner and Ms. Murray were divorced pursuant to a "DECREE OF DIVORCE" (final divorce decree) that the Chancery Court of DeSoto County, Mississippi, filed on April 1, 2009. That court "ratified, approved and adopted" the settlement agreement, made it "part of the Decree of Divorce for all property settlement and other purposes", and ordered that it "shall and does determine the rights of the parties".

Pursuant to paragraph 5 of the settlement agreement, titled "ALIMONY", petitioner made payments of $25,000 and $30,000 to Ms. Murray on the two respective dates in 2009 specified in that paragraph of that agreement.[2]

Petitioner filed electronically Form 1040, U.S. Individual Income Tax Return, for his taxable year 2009 (2009 return). In that return, petitioner showed "total tax" of $5,331 and claimed a deduction as alimony for the two payments totaling $55,000 that he had made to Ms. Murray during 2009 pursuant to paragraph 5 of the settlement agreement. Before claiming that deduction in his 2009 return, petitioner did not seek any advice as to the propriety of that deduction. He did, however, ask H&R Block to review his 2009 return after he had prepared it

---

[2]Pursuant to paragraph 5 of the settlement agreement, petitioner was required to pay (1) $25,000 to Ms. Murray on the date of the execution of that agreement (i.e., March 5, 2009) and (2) $30,000 to her 30 days from the date of that execution (i.e., April 4, 2009).

but before he filed it. He did not provide that company at the time it reviewed that return a copy of the settlement agreement or the final divorce decree.

Respondent issued a notice of deficiency (notice) to petitioner with respect to his taxable year 2009. In that notice, respondent determined to disallow the deduction that petitioner had claimed as alimony in his 2009 return for the two payments totaling $55,000 that he had made to Ms. Murray during 2009 pursuant to paragraph 5 of the settlement agreement. Respondent also determined in the notice that petitioner is liable for the accuracy-related penalty under section 6662(a).

OPINION

Petitioner bears the burden of establishing that the determinations in the notice are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

We address initially the alimony deduction that petitioner claimed in his 2009 return for the two payments totaling $55,000 (payments at issue) that he had made to Ms. Murray during 2009 pursuant to paragraph 5 of the settlement agreement. Section 215(a) allows an individual to deduct "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year." Section 215(b) defines the term "alimony or separate maintenance pay-

ment" for purposes of section 215 to mean "any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

Section 71(b)(1) provides the following definition of the term "alimony or separate maintenance payment":

> SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
>
> (b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a

substitute for such payments after the death of the payee spouse.

Section 71(b)(2) provides the following definition of the term "divorce or separation instrument" used in section 71(b)(1)(A) and (B):

SEC. 71.  ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(b) Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

\*     \*     \*     \*     \*     \*     \*

(2) Divorce or separation instrument.--The term "divorce or separation instrument" means--

(A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

(B) a written separation agreement, or

(C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

The parties agree that the payments at issue must meet all four requirements in section 71(b)(1)(A) through (D) in order to constitute an alimony or separate maintenance payment that is deductible under section 215(a) and includible in the

income of the recipient under section 71(a).[3]  They disagree as to whether those payments satisfy the requirement in section 71(b)(1)(D).

The requirement in section 71(b)(1)(D) is satisfied if the payor has "no liability to make any * * * payment for any period after the death of the payee spouse and * * * no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."  Whether that requirement is satisfied is determined by the terms of the applicable instrument or, if the instrument is silent on the matter, by State law.  See Kean v. Commissioner, T.C. Memo. 2003-163, aff'd, 407 F.3d 186 (3d Cir. 2005).

We consider first the terms of the settlement agreement.  That agreement is silent as to whether petitioner's obligation in that agreement to make the payments at issue to Ms. Murray would have terminated if she (or he) had died before he had made those payments.

Because the settlement agreement is silent, we turn for guidance to the law of the State of Mississippi (Mississippi law).  Before addressing Mississippi law, we note that our characterization of the payments at issue as periodic alimony or lump-sum alimony under that law is determinative of whether those payments

---

[3]Consistent with sec. 71(a), sec. 61(a)(8) defines gross income to mean all income from whatever source derived, including alimony and separate mainte-nance payments.

satisfy the requirement in section 71(b)(1)(D).  That is because under Mississippi law "[p]eriodic alimony consists of periodic payments to the payee spouse that are to continue indefinitely until the remarriage of the payee spouse or the death of either the payor or payee spouse."  Barrett v. United States, 74 F.3d 661, 664 (5th Cir. 1996) (citing Bowe v. Bowe, 557 So. 2d 793, 795 (Miss. 1990), and Wray v. Wray, 394 So. 2d 1341, 1344 (Miss. 1981)).  Moreover, under Mississippi law, upon the request of either spouse, a court may modify periodic alimony if the court were to find that the requesting spouse had a material change in economic circumstances.  Under Mississippi law, "[t]he court cannot deprive itself of the power to modify periodic alimony in the future and cannot extend the payments past the remarriage of the payee spouse or death of either spouse."  Id. (citing Armstrong v. Armstrong, 618 So. 2d 1278, 1281 (Miss. 1993), Bowe, 557 So. 2d at 795, and East v. East, 493 So. 2d 927, 931 (Miss. 1986)).

In Barrett, the U.S. Court of Appeals for the Fifth Circuit, the court to which an appeal in this case would normally lie if this case were appealable, which it is not because it is an S case, indicated that periodic alimony under Mississippi law is in contrast to lump-sum alimony under that law.  In the words of the Court of Appeals,

> Mississippi's lump sum alimony is a final settlement, substituting as a division of property, between a husband and wife that cannot be subsequently modified for any reason except fraud. The death or remarriage of the payee spouse does not effect [sic] the payor spouse's obligation; lump sum alimony is treated like a traditional debt and is even chargeable to the estate of the payor spouse. * * *

Id. at 665 (fn. refs. omitted) (citing Armstrong, 618 So. 2d at 1281, Cunningham v. Lanier, 589 So. 2d 133, 136 (Miss. 1991), Bowe, 557 So. 2d at 795, Wray, 394 So. 2d at 1344, 1345, Hubbard v. Hubbard, 656 So. 2d 124, 129-130 (Miss. 1995), and Maxcy v. Estate of Maxcy, 485 So. 2d 1077, 1078 (Miss. 1986)).

Under Mississippi law, "an alimony decree is presumed to provide for periodic alimony unless the decree 'by clear and express language' provides for lump sum alimony. Ideally, a lump sum alimony award will state that the payor spouse must pay a certain total sum, payable in specified monthly installments; however, there is no required form for lump sum alimony." Id. (fn. refs. omitted) (quoting Creekmore v. Creekmore, 651 So. 2d 513, 518 (Miss. 1995), Sharplin v. Sharplin, 465 So. 2d 1072, 1073 (Miss. 1985), and Wray, 394 So. 2d at 1345). In order to ascertain whether a decree or an award of alimony "'by clear and express language' provides for lump sum alimony", id., we must consider the substance of, and not the label attached to, the alimony awarded, id. (citing Creekmore, 651 So. 2d at 518).

In paragraph 5 of the settlement agreement, petitioner and Ms. Murray used the phrase "lump sum alimony" to refer to the "sum of $55,000" that he was to pay to her in two respective installments of $25,000 and $30,000 on the date of the execution of that agreement (i.e., March 5, 2009) and 30 days from the date of that execution (i.e., April 4, 2009). We conclude that that phrase "lump sum alimony" that petitioner and Ms. Murray used in paragraph 5 of the settlement agreement was not intended by them to be a mere label. That is because in the sentence in paragraph 5 of the settlement agreement immediately preceding the sentence in which petitioner and Ms. Murray agreed that he was to pay to her "the sum of $55,000 as lump sum alimony" they acknowledged in unambiguous language that each of them was aware of the different types of alimony under Mississippi law. That immediately preceding sentence set forth the following agreement of petitioner and Ms. Murray: "The parties freely, voluntarily, expressly, and mutually agree to release one another of any and all duty and obligation one may owe to the other for any alimony or related support <u>whether lump sum, periodic, rehabilitative or of any nature</u>, except as specifically set out herein." (Emphasis added.) We conclude that when petitioner and Ms. Murray used the phrase "lump sum alimony" in the next sentence in paragraph 5 of the settlement agreement they

intended that the substance of the $55,000 amount that he was to pay her in two installments was lump-sum alimony under Mississippi law.

The characteristics of "the sum of $55,000" that petitioner agreed to pay to Ms. Murray in paragraph 5 of the settlement agreement reinforce our conclusion. One of the characteristics of lump-sum alimony under Mississippi law is that the alimony decree provides "a specified duration of time for the payments, after which the obligation ceases." Barrett, 74 F.3d at 665 (citing Creekmore, 651 So. 2d at 518). In paragraph 5 of the settlement agreement, petitioner and Ms. Murray agreed that he make the following two payments to her totaling $55,000 on the following dates in 2009: (1) $25,000 on the date of the execution of that agreement (i.e., March 5, 2009) and (2) $30,000 30 days from the date of that execution (i.e., April 4, 2009).

Another characteristic of lump-sum alimony under Mississippi law is that it "constitutes a final settlement between the parties that is not subject to subsequent modification." Id. at 665-666. Petitioner and Ms. Murray agreed in the settlement agreement in pertinent part as follows with respect to its "MODIFICATION": "A modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement, and approved by the [Chancery] Court [of DeSoto County, Mississippi]". As a

result, the Chancery Court of De Soto County, Mississippi, was not allowed to modify, sua sponte or on the request of either petitioner or Ms. Murray, "the sum of $55,000" that he was to pay to her "as lump sum alimony" in two installments on the dates specified, as required in paragraph 5 of the settlement agreement.

On the record before us, we find that under Mississippi law petitioner's obligation to make the payments at issue to Ms. Murray, as required by paragraph 5 of the settlement agreement and the final divorce decree, would not have terminated if he (or she) had died before he had made one or both of those payments. On that record, we further find that the payments at issue do not satisfy the requirement in section 71(b)(1)(D). On the record before us, we find that the payments at issue do not constitute alimony deductible under section 215.

We now address whether petitioner is liable for his taxable year 2009 for the accuracy-related penalty under section 6662(a). That section imposes an accuracy-related penalty of 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also

been defined as a failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), aff'g T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990). The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the tax return for that year or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the

knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on the advice of a professional may demonstrate reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. Id. In this connection, a taxpayer must demonstrate that the taxpayer's reliance on the advice of a professional concerning substantive tax law was objectively reasonable. Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), aff'g T.C. Memo. 1993-480. A taxpayer's reliance on the advice of a professional will be objectively reasonable only if the taxpayer has provided necessary and accurate information to the professional. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

It is respondent's position that petitioner is liable for his taxable year 2009 for the accuracy-related penalty under section 6662(a) because there is a substantial understatement of tax for that year under section 6662(b)(2).[4] On the record

---

[4]Respondent argues in the alternative that petitioner is liable for his taxable year 2009 for the accuracy-related penalty under sec. 6662(a) because he was negligent under sec. 6662(c) since "he made no reasonable attempt to comply with the provisions of this title [26 of the U.S. Code]."

before us, we agree with respondent that there is a substantial understatement of tax for petitioner's taxable year 2009.[5]

It is petitioner's position that he nonetheless is not liable for his taxable year 2009 for the accuracy-related penalty under section 6662(a) because he "intended for the payments to be periodic alimony, believed that his attorney structured the Property Settlement Agreement as such. For these reasons, Petitioner has reasonable cause for deducting his payments as alimony." Accordingly, petitioner claims, he "acted in good faith and has reasonable cause for deducting the payments [at issue] on his tax return." On the record before us, we reject petitioner's position. That is because the record does not support, or belies, petitioner's claims in support of his position that he is not liable for the accuracy-related penalty.

On the record before us, we find that petitioner has failed to carry his burden of establishing that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment for his taxable year 2009. On that record, we find that petitioner has failed to carry his burden of establishing that he is not liable for his taxable year 2009 for the accuracy-related penalty under section 6662(a).

_____

[5]In petitioner's 2009 return, he showed "total tax" of $5,331. In the notice, respondent determined a deficiency of $14,430.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.