723 So.2d 1236 (1998)
Ernest L. PRINE, Appellant,
v.
Linda Darlene PRINE, Appellee.
No. 96-CA-00856 COA.
Court of Appeals of Mississippi.
November 24, 1998.
James Coleman Rhoden, Columbia, Attorney for Appellant.
Garland D. Upton, Columbia, Attorney for Appellee.
EN BANC.
McMILLIN, P.J., for the Court:
¶ 1. This is an appeal from a judgment in a post-divorce contempt proceeding brought by Ernest Prine against his former wife, Linda Darlene Prine. Mr. Prine brought the action in an attempt to recover possession of certain items of personalty he claimed were his property under the property settlement agreement but which were being wrongfully held by Mrs. Prine. The chancellor ordered Mrs. Prine to turn over two items sought by Mr. Prine but denied any further relief. Mr. Prine appealed that part of the ruling denying him possession of the remaining items he had sought. We conclude that the chancellor was acting within his discretion in this matter and, therefore, we affirm the chancellor's ruling.

I.

Facts
¶ 2. The parties were divorced on the ground of irreconcilable differences in January 1991. The property settlement agreement entered in the proceeding and approved by the chancellor contained a detailed list of items of personalty accumulated during the marriage along with an itemization of which party was to receive possession and title to each item. The agreement further provided that "[a]ll property [was] to be divided prior to [the] divorce becoming final."
¶ 3. The evidence is uncontradicted that, after the divorce became final, the parties continued to cohabit, with little visible change in their living arrangement, until mid-1993, when Mr. Prine finally vacated the jointly-occupied dwelling. He did not retrieve and take with him, on his departure, all of those items listed as his in the 1991 *1237 divorce judgment. After he left the premises, his former wife  at least according to his allegations  refused to permit him to recover possession of the items he left behind.
¶ 4. In the fall of 1993, the parties became embroiled in a multi-issue dispute before the chancellor. The chancellor ordered the parties to submit affidavits setting out the nature of their various disputes and their respective positions on the issues so that he could finally resolve all of the contested matters. In response to that order, Mr. Prine filed an affidavit that, among other things, alleged as Paragraph 7 that:
Plaintiff [Mr. Prine] would further show that he has items of personal property located at the residence of Defendant and after several requests, Defendant has continued to retain said items and has refused to surrender them.
¶ 5. The chancellor entered a Memorandum Opinion in that proceeding on April 20, 1994, that was intended to dispose of all matters pending before the court. The court later affirmed the provisions of that opinion as the judgment of the court. The opinion was silent on the issue of Mr. Prine's asserted claim to the personal property which we quoted above. No motion to reconsider that ruling was made and no appeal was taken from that April 1994 action of the chancellor.
¶ 6. Instead, on August 22, 1995, Mr. Prine commenced the contempt proceeding that is now before the Court. The chancellor originally declined any relief to Mr. Prine for two different reasons. First, he said that the parties, by obtaining the court's approval of the divorce agreement, represented to the chancellor that the physical division of the personalty had already been accomplished and neither party should be allowed to pursue any relief in equity, the need for which arose largely by virtue of what was, in effect, a misrepresentation of fact to the court. Second, the chancellor held that the ruling that ended the 1994 proceeding was res judicata as to any existing dispute over rightful possession of any items of personalty covered in the original divorce judgment.
¶ 7. Ultimately, though without retreating from his ruling as to the applicable law, the chancellor relented to the extent that he ordered Mrs. Prine to surrender to Mr. Prine a boat and a refrigerator that she had testified were still at her residence. Mrs. Prine readily agreed to do so.

II.

Discussion
¶ 8. We are limited in our review of a chancellor's resolution of a dispute of this nature to a search for manifest abuses of discretion and misapprehensions as to the governing law. Parker v. Parker, 641 So.2d 1133, 1137 (Miss.1994). We conclude that neither occurred in this case.
¶ 9. The chancellor was entirely correct when he observed that, had the parties abided by the explicit terms of their agreement, this dispute could not possibly have occurred. By requesting the chancellor to grant an irreconcilable differences divorce, the parties were obligated to resolve their intertwined financial and property affairs by written agreement filed in the proceeding. § 93-5-2 Miss.Code Ann. (Rev.1994). In complying with this requirement, the parties affirmatively represented to the court that a physical division of the property had already occurred. This was an event that, had it in fact been true, would have rendered impossible the dispute that the chancellor was called upon to resolve some two and a half years later. It is a basic maxim of equity that one seeking equitable relief must come into court with "clean hands." V.A. GRIFFTH, MISSISSIPPI CHANCERY PRACTICE § 32 (2d ed.1950). It is difficult to envision how a former spouse who, having represented to the court that he was already in physical possession of those items due by him, later claims that this was not, in fact, true could be said to have satisfied the "clean hands" doctrine.
¶ 10. Equally as compelling is the chancellor's assertion that the 1994 proceeding where Mr. Prine raised the issue of possession of his personalty and then failed to secure a ruling on it rendered the issue res judicata. We are satisfied that the chancellor's failure to grant the relief sought by Mr. Prine in his 1994 affidavit was, in the eyes of the law, the equivalent of his having affirmatively *1238 denied any such relief. "If these four identities [necessary to invoke the doctrine of res judicata ] are present, the parties will be prevented from relitigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit." Dunaway v. W.H. Hopper & Assocs., 422 So.2d 749, 751 (Miss.1982) (emphasis supplied). Mr. Prine's remedy for the chancellor's failure to resolve the issue of the personal property in 1994 was to point the omission out to the chancellor by an appropriate post-judgment motion and, in the event of an unsatisfactory ruling on the motion, to appeal the issue. Since no Rule 59 motion was filed within ten days of the chancellor's ruling, the thirty day appeal period continued to run unabated and had long since expired before this proceeding was commenced.
¶ 11. The chancellor was, in the opinion of this Court, correct in both aspects of his ruling. Either theory was a sufficient basis, to deny Mr. Prine any relief. If there was any error committed by the chancellor, it was his decision to grant Mr. Prine partial relief by ordering Mrs. Prine to turn over a boat and a refrigerator after already ruling that Mr. Prine was entitled to no relief based on both equitable and legal considerations. However, were that to be error, it was an error detrimental to Mrs. Prine from which she would have been entitled to appeal. Because she was willing to abide by the terms of the chancellor's directive and did not perfect a cross appeal, that question is also res judicata. For all of the foregoing reasons, we are of the opinion that the chancellor's decision ought to be affirmed.
¶ 12. THE JUDGMENT OF THE MARION COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., HERRING, KING, PAYNE, and SOUTHWICK, JJ., concur.
HINKEBEIN, J., dissents with separate written opinion joined by THOMAS, P.J., COLEMAN, and DIAZ, JJ.
HINKEBEIN, J., dissenting:
¶ 13. Since neither of the parties have ever disputed the property settlement agreement's validity, the only issue in this case is whether Mr. Prine abandoned the personal property he was to receive under its terms when he finally left the marital home in 1993. The chancellor's ruling reveals that he apparently found that Mr. Prine had not done so. With this in mind, I respectfully dissent based upon my belief that the chancellor's decision to award some of the disputed property to Mr. Prine while vesting title to the remainder in his former wife constituted an impermissible attempt to modify the terms of the property settlement agreement.
¶ 14. The Mississippi Supreme Court has held that "[a] true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." East v. East, 493 So.2d 927, 932 (Miss.1986). As such
[t]he rules applicable to the construction of written contracts in general are to be applied in construing a post-nuptial agreement. Such a contract must be considered as a whole, and from such examination the intent of the parties must be gathered. Such construction should be given the agreement, if possible, as will render all of its clauses harmonious, so as to carry into effect the actual purpose and intent of the parties as derived therefrom.
Roberts v. Roberts, 381 So.2d 1333, 1335 (Miss.1980). Property settlement agreements are contractual obligations arising on the date of final judgment of divorce and may be specifically enforced by a chancellor if such action is necessary to effectuate the terms of the agreement. See Mount v. Mount, 624 So.2d 1001, 1005 (Miss.1993) (holding property settlement to be contractual obligation from date of final judgment of divorce); Jones v. Jones, 532 So.2d 574, 580 (Miss.1988) (holding that property settlement agreements may be specifically enforced). Regarding chancellors' attempts to modify valid property settlement agreements, our supreme court has held that "[w]hen the parties have reached agreement and the *1239 chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it as we ordinarily do when persons seek relief from their improvident contracts." Bell v. Bell, 572 So.2d 841, 844 (Miss.1990). Accordingly, it is reversible error for a chancellor to attempt to modify the terms of a valid property settlement agreement. See Mount, 624 So.2d at 1005 (holding that chancellor committed manifest error when he modified property settlement agreement); Bowe v. Bowe, 557 So.2d 793, 795 (Miss.1990) (stating that property settlement agreement may not be modified absent fraud or contractual provision allowing modification).
¶ 15. Part of the chancellor's explanation for his course of action was that the terms of the property settlement agreement were ambiguous as to the "small hand tools" Mr. Prine was supposed to receive. Accordingly, based upon this perceived ambiguity the chancellor held that he could not accurately enforce this portion of the property settlement agreement, despite testimony from both Mr. and Mrs. Prine that they knew exactly which tools Mr. Prine was to receive under the term "small hand tools" as such term was used in the property settlement agreement. Additionally, the chancellor made no finding as to Mr. Prine's rights with respect to a "Yamaha 250 four wheel ATV" that Mr. Prine was to receive under the terms of the property settlement agreement, an article of personal property which Mrs. Prine gave away for no consideration after Mr. Prine fled the marital home.
¶ 16. Under these facts I must conclude that the chancellor committed manifest error in attempting to modify the terms of an enforceable property settlement agreement. See Mount, 624 So.2d at 1005 (holding that chancellor committed manifest error when he modified property settlement agreement). Accordingly, I would reverse the chancellor's decision and remand this matter back to the chancery court.
THOMAS, P.J., COLEMAN and DIAZ, JJ., join this separate written opinion.