## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-IA-01158-SCT

*DEBORAH GAYLE THORNTON WEST*

*v.*

**CHARLES TIMOTHY WEST**

| | |
|---|---|
| DATE OF JUDGMENT: | 7/8/2002 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | PATRICK F. McALLISTER |
| | WILLIAM B. PEMBERTON, II |
| ATTORNEYS FOR APPELLEE: | JAMES A. BECKER, JR. |
| | JOHN V. ESKRIGGE |
| | EDWARD L. CARLISLE |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 08/12/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND DICKINSON, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This family law case concerns a property settlement agreement ("PSA") between former spouses.

Many years after the PSA was approved by the court, it was found to be ambiguous and void. The wife

sought an interlocutory appeal which this Court granted.

### FACTS

¶2. Charles Timothy West ("Tim") and Deborah Gayle Thornton West ("Debbie") were married on

July 28, 1979. Three children were born during their marriage. Tim and Debbie were divorced in

November 1994, after filing a Joint Complaint for Divorce that incorporated a property settlement agreement. Nine years after the divorce, Tim stopped paying what was due pursuant to the PSA. Debbie then filed a contempt proceeding. Tim argued that provisions in the PSA were ambiguous.[1]

---

[1]     The provisions which Tim states are ambiguous are as follows:

ARTICLE II. It is the intention of the Husband and the Wife to benefit and share equally the employment and business income of Husband without regard to the marital status of the parties to each other or to a third party. Husband shall pay to Wife bi-weekly periodic payments of One-half of husband's income, which at present is $1,458.54 . . . beginning May 1, 1994, and one-half of net monthly Director's fee which is $500.00, and continuing until the earliest to occur of the death of either or if the parties should divorce then this support would become fixed, lump sum installment alimony based upon the present amount together with one-half of increases, payable until Wife's seventh [sic] (70) birthday, which payments will not be terminated, reduced or otherwise affected by the remarriage of either party but will terminate upon the death of the Wife, if prior to age seventy (70). The bi-weekly payments shall increase or decrease annually in accordance with the Husband's total salary to provide for bi-weekly payments equal to one-half (½) of Husband's monthly salary from West Quality Food Service, Inc. or substituted business/employer. For purposes of this agreement, Husband's "monthly salary" shall be defined as the gross taxable salary or wages paid to husband from West Quality Food Service, Inc., or substituted business/employer, less amounts withheld from such salary or wages for payment of premiums on insurance covering the minor children of the parties. . . .

ARTICLE III (H). Husband agrees and hereby acknowledges that Wife is entitled to and shall be vested with one-half (½) of all existing marital assets, including, but not limited to, stocks, limited partnerships and business assets. Both parties also acknowledge, however, the existing contractual restrictions on the major business assets of Husband which presently prevent immediate transfer. Husband agrees to promptly transfer one-half (½) of those assets as and when they become restricted; or if they are sold, conveyed, transferred, surrendered, exchanged, or otherwise disposed of by Husband, then Husband will immediately pay one-half (½) of the proceeds, remunerations or other considerations to Wife.

* * *

Husband acknowledges, and it is the intention of both parties, to make a present transfer to Wife of one-half (½) vested equitable ownership interest in said properties as a division of marital assets, while married, and this Agreement constitutes an existing equitable lien to Wife of one-half (½) of said properties.

2

Before ruling on the matter, the chancellor wrote to counsel informing them of his initial thoughts on the case. He stated:

1. The Property Settlement Agreement in this case can only be described as "An Invitation to Litigation." It is ambiguous and contradicts itself in certain respects.

2. Mrs. West's claims that she is entitled to alimony based upon K-1 filings where no actual cash distribution was received by Mr. West is ludicrous and will not be sustained by the Court.

3. As to division of "marital assets," the Agreement fails to define what they are. The term "marital assets" is now clearly defined by Ferguson and Hemsley and their progeny. Prior to those cases, Mississippi was a "title state."

4. Assuming that Mrs. West became vested with an equitable interest in 50% of Mr. West's ownership of stock or other interest in the family business as a marital asset, I question whether she could claim entitlement to a sum greater than the value of those interests as of the date of the agreement. Any enhanced value after the date of that agreement would not constitute a "marital asset."

5. Although the alimony provision of the agreement mentions business income, it goes on to specify salary or wages, bonus and director fees as the specific items to be included. As a general rule of contract construction, specific language controls and limits general language within a contract.

6. Although the Court has not yet seen the specific restrictions on transfer of Mr. West's stock in the family business, the Court is very familiar with those type restrictions. And if those restrictions are as broad as some I have prepared as a lawyer, Mrs. West will never realize anything out of that stock ownership unless those businesses are sold by consent of all the stockholders.

¶3. Following its letter to counsel, the chancery court entered its judgment, finding that the agreement was conflicting and confusing, that it was unable to resolve the differences, that there was no meeting of the minds between the Wests as to the alimony provision of the agreement, and that, in the absence of an agreement between the parties, the issue should be presented anew to the court. Tim filed a motion for amendment to judgment, to make additional findings, and for a new trial on certain issues. Debbie then filed a motion for entry of findings and conclusions, to alter or amend judgment, alternatively, for a new trial.

3

Debbie then filed a motion for certification pursuant to M.R.C.P. 54(b), alternatively, for leave to file an interlocutory appeal pursuant to M.R.A.P. 5. The chancery court issued an interlocutory order denying Debbie's Motion for Rule 54(b) certification, denied her motion for interlocutory appeal, and also denied Tim's motion for a new trial. We granted Debbie's petition for permission to appeal from the interlocutory order. *See* M.R.A.P. 5.

## STANDARD OF REVIEW

¶4. Our standard of review for all appeals involving domestic relations matters is limited. We will not disturb the findings of a chancellor unless the chancellor was "manifestly wrong, clearly erroneous or an erroneous legal standard was applied."*Perkins v. Perkins*, 787 So. 2d 1256, 1260 (Miss. 2001) (citing *Montgomery v. Montgomery*, 759 So. 2d 1238, 1240 (Miss. 2000)).

## DISCUSSION

**I. WHETHER THE TRIAL COURT ERRED IN VOIDING THE ALIMONY AND DIVISION OF MARITAL ASSETS PROVISIONS OF THE PSA.**

**II. WHETHER THE TRIAL COURT ERRED IN CONCLUDING THAT THE ALIMONY AND DIVISION OF MARITAL PROPERTY ASSETS PROVISIONS OF THE PSA ARE AMBIGUOUS, UNCONSCIONABLE AND CONTAIN ILLEGAL ESCALATION CLAUSES.**

¶5. Debbie argues that the PSA is part of the judgment of the court. She contends that Tim's attempt to avoid the alimony and division of marital property provisions is an attempt to void the judgment that became final in 1994. She states that M.R.C.P. 60(b) allows a party to obtain relief from a judgment under some limited circumstances, but none of those circumstances are present in the case sub judice. Tim argues that there was a mistake in the drafting of the PSA and that Rule 60 does not apply to the present situation.

4

¶6.    "[S]ettlement agreements entered into by divorcing spouses and judicially approved under our Irreconcilable Differences Divorce Act, Miss. Code Ann. § 93-5-2 (Supp.1990), become a part of the decree and enforceable as such as though entered by the court following contested proceedings." **Bell v. Bell**, 572 So. 2d 841, 844 (Miss. 1990). When the Irreconcilable Differences Divorce Act has been complied with, the custody, support, alimony and property settlement agreement becomes a part of the final decree for all intents and purposes. **Switzer v. Switzer**, 460 So. 2d 843, 845 (Miss. 1984). If the agreement is sufficient to comply with the statute, that is enough to render it a part of the final decree of divorce the same as if the decree including the same provisions as may be found in the property settlement agreement had been rendered by the chancery court following a contested divorce proceeding. **Id**. at 846. As a matter of law, a PSA that complies with the statute can never be a document extraneous to the final decree. **Id**. However, where ambiguities may be found in the agreement, it should be construed much as is done in the case of a contract, with the court seeking to gather the intent of the parties. **Id**. at 846.

*Does Rule 60 Apply?*

¶7.    Debbie argues that M.R.C.P. 60 does not allow Tim to challenge the chancery court's judgment nine years after it was entered. Tim argues that Rule 60 does not apply to the present case because it is not one of a motion for relief from judgment or order. He argues that he paid alimony based on the only specific clear language in the alimony provisions of the PSA, and that only after Debbie filed her complaint did the issue of the clarity of the PSA come into dispute. We find that Rule 60 is not applicable to the present case because the complaint was not a motion for relief from a judgment or order.

*Ambiguity*

¶8.    Both parties make numerous arguments about whether the agreement is ambiguous. Debbie argues that the parties agreed to divide equally Tim's business and employment income so that both parties would

5

receive the same annual net income. Tim argues the PSA provisions are ambiguous. He offers as an example of the ambiguity the provision that, upon the divorce of the parties, the periodic alimony will change to lump sum installment alimony; yet the amount of the lump sum is not specified. He also argues that lump sum alimony is inconsistent with the inserted language that payments to the wife are to be apportioned.

¶9.     In Mississippi there are four types of alimony: (1) periodic, (2) lump sum, (3) rehabilitative, and (4) reimbursement. *Guy v. Guy*, 736 So. 2d 1042, 1046 (Miss. 1999); *Hubbard v. Hubbard*, 656 So. 2d 124, 130 (Miss. 1995); *Smith v. Little*, 834 So. 2d 54, 57 (Miss. Ct. App. 2002). Periodic alimony is monthly alimony awarded on the basis of need. *See Cunningham v. Lanier*, 589 So. 2d 133, 136-37 (Miss. 1991). It automatically terminates at the death of the payor spouse or the remarriage of the recipient spouse. *McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996); *Wolfe v. Wolfe*, 766 So. 2d 123, 129 (Miss. Ct. App. 2000). Periodic alimony becomes vested when the payment becomes due. *In re Estate of Hodges*, 807 So. 2d 438, 442 (Miss. 2002). On the other hand, lump sum alimony is an irrevocable and fixed amount. Lump sum alimony is "not considered to be in the nature of continuing support, but rather a property transfer which is vested in the recipient spouse at the time said alimony is awarded." *McDonald*, 683 So. 2d at 931. "The fact that payments of lump sum alimony are often paid in installments may give said payments a superficial similarity to payments of periodic alimony, but said fact does not change the vested, non-modifiable nature thereof." *Id.* Lump sum alimony is "a final settlement between husband and wife, unaffected by the remarriage of the payee spouse." *Cunningham v. Lanier*, 589 So. 2d at 137. "It is fundamental that alimony which 'substitutes' as a division of property

6

is lump sum rather than periodic alimony, which by contrast is associated with maintenance and support of the former spouse." ***Id.*** at 136-37.

¶10.    "[P]roperty settlement agreements are contractual obligations." ***In re Estate of Hodges***, 807 So. 2d at 445 (citing ***Prine v. Prine***, 723 So. 2d 1236, 1238 (Miss. Ct. App. 1998)). "The provisions contained within a 'property settlement agreement executed prior to the dissolution of marriage, 'purporting to resolve the parties' property rights, are 'interpreted by the courts as any other contract.'" ***Id***. at 445. As stated in ***East v. East***, 493 So. 2d 927, 931-32 (Miss. 1986), "[a] true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character." When an agreement is clear and unambiguous, we are "not concerned with what the parties may have meant or intended but rather what they said, for the language employed in the contract is the surest guide to what was intended." ***Shaw v. Burchfield***, 481 So. 2d 247, 252 (Miss. 1985); ***Palmere v. Curtis***, 789 So. 2d 126, 131 (Miss. Ct. App. 2001). Disagreement over the meaning of a provision of the contract does not make the contract ambiguous. ***Id.*** at 130-31. A court is obligated "to enforce a contract executed by legally competent parties where the terms of the contract are clear and unambiguous." ***Merchants & Farmers Bank v. State ex rel. Moore***, 651 So. 2d 1060, 1061 (Miss. 1995); ***Palmere***, 789 So. 2d at 130.

¶11.    Having read the agreement as a whole and considered the intentions of the parties, we find that the Wests' PSA is unambiguous in terms of the amounts to be paid. Tim and Debbie entered into a court-approved contract regarding the disposition of their marital property. There is no evidence of fraud or overreaching. At the time he executed the Agreement, Tim intended to provide one-half of his

7

employment and business income to Debbie, regardless of their marital status to each other or to a third party. The issue of whether the payments are lump-sum alimony, vesting at the time of the agreement, or periodic alimony, with each payment vesting when due, was not raised and is not before us. In the event the parties intended, and the chancellor finds, that the payments are periodic alimony, then the agreement should not be disturbed, absent a material change in circumstances. *Hubbard*, 656 So. 2d at 129. We look to the substance, rather than the label, to determine whether alimony is periodic or lump-sum. *Id.* Furthermore, "unless it is clear from the record what sort of award (alimony) is given, we will construe any ambiguity as being periodic and not lump sum." *In re Estate of Hodges*, 807 So. 2d at 442 (citation omitted). Tim clearly agreed to these terms. As to marital property, the agreement states that Debbie is entitled to one-half of all existing marital assets, including but not limited to stocks, limited partnerships and business assets. This provision clearly manifests an intent that Tim and Debbie equally share all marital assets. Other provisions of the PSA address the marital dwelling, husband's residence, automobiles, household furnishings, and personal effects. Therefore, the only remaining assets within the parties' definition of marital assets are Tim's interests in various West family businesses. During the course of the marriage and at the time of divorce, Tim owned stock interests in West Quality Food Services, Inc., and Coastal Express, Inc., and held limited partnership interests in West Leasing Company, West Brothers Leasing Company and West Family Leasing Company. Pursuant to the terms of the PSA, Debbie is entitled to equally share these assets.

¶12. We have "not required consensual support agreements to follow the same terms as for court-imposed alimony." *Elliott v. Elliott*, 775 So. 2d 1285, 1289 (Miss. Ct. App. 2001). In property and financial matters between the divorcing spouses themselves, there is no question, that absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take a dim view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.

8

*Weathersby v. Weathersby*, 693 So.2d 1348, 1351 (Miss. 1997).

*Unconscionability*

¶13.    The chancellor found that the PSA was unconscionable but stated no reasons for this conclusion. A contract may be either procedurally or substantively unconscionable. Procedural unconscionability goes to the formation of the contract. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002). Substantive unconscionability occurs when the terms of the agreement are so one-sided that no one in their right mind would agree to its terms. *In re Johnson*, 351 So. 2d 1339, 1341 (Miss. 1977).   In the present case, Tim was represented by counsel during the preparation of the PSA, negating any finding of procedural  unconscionability.  The record shows that the parties negotiated the terms of the PSA for almost a year before it was submitted to the chancellor for approval.  Tim is a sophisticated businessman who acknowledges that he read the PSA.  We find that the PSA is not unconscionable.

*Escalation clause*

¶14.    The chancellor also found that the PSA contained an illegal escalation clause.  Escalation clauses are enforceable even though the agreement turns out to be a raw deal for one party as long as there is no fraud, overreaching, or mistake. *Speed v. Speed*, 757 So. 2d 221, 227 (Miss. 2000).  A plain reading of the PSA states that it shall increase or decrease in accordance with Tim's salary.  This does not provide for an increase every year.

¶15.    We find that the chancellor erred in voiding the alimony and property settlement provisions of the PSA and in concluding that these provisions are ambiguous, unconscionable and contained illegal escalation clauses.  This agreement reflects a deliberate and thorough division of the Wests' marital assets.  To find otherwise circumvents the express language of the agreement.  The chancellor inadvertently overlooked the fact that Tim, as a party to the agreement, contracted away half of his employment and business income

in addition to interests in various West Family businesses. Tim made a deal that he had no problem with for nine years. He was represented by numerous counsel during negotiations of the PSA and should not now be heard to complain. The chancellor erred by failing to enforce the PSA as written.

### III. WHETHER THE CHANCELLOR HAD JURISDICTION TO DETERMINE ALIMONY AND DIVIDE MARITAL ASSETS FOR A SECOND TIME.

¶16. Debbie argues that the chancellor lacked jurisdiction to try the issues on a complaint seeking an irreconcilable divorce, either initially or "anew", in the absence of the parties' express written consent. She cites Miss. Code Ann. § 93-5-2(3) and *Joinder v. Joinder*, 739 So. 2d 1043, 1045 (Miss. Ct. App. 1999), to support her argument that the chancery court has only the jurisdiction expressly allowed by statute regarding divorce matters. She states that although chancery courts have the authority to interpret PSAs in accordance with Mississippi law, they lack the authority to determine alimony and property settlement matters anew after granting the parties an irreconcilable differences divorce and approving the PSA.

¶17. Tim contends that the chancellor did not void the final judgment, but rather reviewed a contract. He states that the chancellor was following Mississippi law to correct the ambiguous provisions of the contract for which there was no meeting of the minds. He argues that Debbie expressly requested the chancellor to clarify and modify numerous provisions of the final judgment in her complaint.

¶18. Debbie's interpretation of the consent requirement of the irreconcilable differences statute is misplaced. The written consent addressed in the statute pertains to the original action and is therefore not at issue here. This issue is moot.

### IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO ENTER SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW.

10

¶19. Debbie argues that the chancery court abused its discretion by failing to enter findings of facts and conclusions of law regarding its judgment and subsequent order. She contends that, although the failure of the chancery court to do so warrants reversing and remanding to make findings of fact and conclusions of law, M.R.C.P. 52 is not jurisdictional, and that since contract interpretation is a question of law, this Court should decide whether the PSA is ambiguous.

¶20. Tim argues that where the evidence is so overwhelming that there is no need for the chancery court to enter findings. *Lowery v. Lowery*, 657 So. 2d 817 (Miss. 1995). Tim also contends that the chancery court technically complied with M.R.C.P. 52 because it made general findings of facts. He cites the Comment to M.R.C.P. 52 that states that the purpose of M.R.C.P. 52 is to enable the appellate court to obtain a correct understanding of the factual issues determined by a trial court. He states that the judgment clearly states the matter at issue is a question of contract interpretation of a PSA.

¶21. M.R.C.P. 52(a) provides a method for any party to request the specific basis upon which a trial judge made a ruling:

> In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required upon these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.

In addition, Rule 4.01 of the Uniform Chancery Court Rules titled "Findings by the Court" provides:

> In all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor shall find the facts specially and state separately his conclusions of law thereon. The request must be made either in writing, filed among the papers in the action, or dictated to the Court Reporter for record and called to the attention of the Chancellor.

U.C.C.R. 4.01.

11

¶22. In the instant case, Debbie requested specific findings of fact and conclusions of law in her motion for entry of findings and conclusions, to alter or amend judgment, alternatively, for a new trial. When the chancery court merely concluded that there was no meeting of the minds between the parties as to alimony and division of marital property, it erred in failing to make the findings Debbie requested. It does not appear that the chancery court refused in this case to make the findings requested by Debbie. Rather, it was deferring doing so until after it held its final evidentiary hearings on the question of alimony and property division. However, "may means discretionary, while the word 'shall' connotes a mandatory directive.'" *Lowery*, 657 So. 2d at 819-20 (quoting *Ivy v. Harrington*, 644 So.2d 1218, 1221 (Miss. 1994)). In *Lowery*, we also noted that "Rule 52 is not jurisdictional and the appellate court may decide the appeal without further findings if it is enabled to do so." *Id.*

## CONCLUSION

¶23. The PSA, as incorporated into the final divorce decree, was a final agreement between the Wests. The chancery court abused its discretion by voiding the alimony and property settlement provisions of the PSA and in concluding that these provisions were ambiguous, unconscionable and contained illegal escalation clauses. The holding of the chancery court stands in conflict with established statutory and case law regarding the legal effect of a PSA incorporated into a final divorce decree. We reverse the chancellor's judgment and remand this case for further proceedings consistent with this opinion.

¶24. **REVERSED AND REMANDED.**

**SMITH, C.J., COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**